Argued and submitted August 25, reversed and
remanded for new trial October 27, 1980

STATE OF OREGON,
*Respondent,*

*v.*

RAYMOND GILBERT ROCHA,
*Appellant.*

(No. 10-79-02659, No. 10-79-02710, CA 16729)

618 P2d 475

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Gary, Deputy Solicitor General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and Karen H. Green, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant was convicted, after trial by jury, of unlawful possession of controlled substances. ORS 475.992. On appeal, he alleges that the trial court erred by allowing his attorney to withdraw without appointing substitute counsel to represent him. He claims he was thereby denied his right to be represented by counsel as guaranteed by Art I, § 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. The state argues that defendant voluntarily waived his right to counsel and elected to represent himself. We reverse.

Defendant originally retained a private attorney to represent him. Both he and his attorney, Jack Billings, appeared for trial on August 14, 1979. Pretrial motions were argued, a jury was empaneled, opening statements were given, and testimony was heard. The next morning Billings moved to withdraw from the case. He informed the court that some difference of opinion had developed over how the defense should be presented. The state's attorney indicated that he had no objection to a withdrawal, and the court then questioned the defendant:

"THE COURT:  * * * Mr. Rocha, I presume that if the Court allows Mr. Billings to withdraw that you would want to retain another attorney. Is that correct?

"THE DEFENDANT:  Yes.

"THE COURT:  All right.

"You don't want to proceed without an attorney?

"THE DEFENDANT:  That's correct."

The trial was then set over, and everyone agreed to meet the next day in order to allow the defendant some time to retain substitute counsel.

The next day defendant's counsel again moved to withdraw. He told the court that, although defendant had been unsuccessful in hiring an attorney, he now wanted to represent himself. The motion was denied, and Billings was told to appear in court the following Tuesday to assist the defendant at trial. On

that day, however, the court indicated that it would reverse itself and allow Billings to withdraw. The following colloquy occurred:

"THE COURT: * * * Mr. Rocha, are you prepared to have the Court release Mr. Billings?

"THE DEFENDANT: If I can represent myself, being my own attorney *with the right to choose my counsel as assistance.*

"THE COURT: All right.

"Well, now, that's two different things.

"To represent yourself is one thing. To choose additional counsel is another thing.

"In other words, at first, the Court had before it the issue of allowing you time to retain an attorney. Then when we came back after a recess, it was my understanding that you had been unable to obtain an attorney, but that you wished to represent yourself.

"THE DEFENDANT: With assistance.

"THE COURT: Well, who do you anticipate assisting you?

"THE DEFENDANT: Two friends that have appeared before the circuit court in the past.

"THE COURT: And would you state on the record what their names are.

"THE DEFENDANT: Thomas J. Martin, Robert Wright.

"THE COURT: Okay.

"Now, neither of these men is licensed to practice law in the State of Oregon; is that correct?

"THE DEFENDANT: That's correct.

"THE COURT: Well, I am not prepared to have them practice law in the courtroom.

"Now, you can have anyone that you want to assist you as far as — you know, you are not in custody, and I don't care who assists you as far as, you know, talking about the case to them.

"You can do that, but it would be contrary to the law, and the Court is not prepared to have them seated at counsel table or to assist you in the trial of the case.

"So, are you prepared to proceed on that basis?

"THE DEFENDANT: *Well, that sheds a new light on the whole matter.*

"I wasn't quite sure whether or not I — in reading the Sixth Amendment, *I thought I had the right to my — choose my own counsel, and so it's a hard question to answer at this time, actually.*

"THE COURT: Well, the United States Supreme Court has said that you have a right to act as your own attorney.

"The United States Constitution guarantees the right to counsel, and so I am prepared to let you assist — you know, to act as your own attorney if you want to.

"I don't recommend it. It's nothing that I recommend to a defendant in a criminal case, to represent themselves [*sic*], and I don't recommend it to you, but you do have a right to do that if you want to, but we have got to go on with this case, so you are going to have to make a decision.

"Now, as I understand it, you do have property, but you don't have any money to pay to an attorney; is that correct?

"THE DEFENDANT: I am purchasing some property, yes.

"THE COURT: Well, I will — this is what I am going to do: I am going to release Mr. Billings, and then we will take this matter up briefly tomorrow morning before we bring the jury back." (Emphasis supplied.)

The next day defendant appeared in court with his friends. The discussion was brief:

"THE COURT: Now, is there some matter to come before the Court before we bring the jury back in?

"THE DEFENDANT: Your Honor, if I might, and if it would be — with the permission of the Court, I will be able to communicate through my counsel? Will I be able to turn back to them?

"THE COURT: No, you won't.

"If you — you are trying this case yourself, and you are entitled to counsel under the Sixth Amendment to the United States Constitution and pursuant to Oregon law and all the case law.

" 'Counsel' means a lawyer, and so we are going to proceed on that basis.

"THE DEFENDANT: Your Honor, I talked to my tribal chairman, and he said that counsel did not

necessarily have to be licensed by the law; that the constitution was written in 1789, and there was no licensed bar association at that time, and that it's my understanding that I could —

"THE COURT: Well, the Court is prepared to follow the law as I understand it to be, and my understanding is that you are entitled to the assistance of a lawyer, and the people that are assisting you are not lawyers. They are not licensed to practice in this court.

"Now, I am prepared to treat you exactly as I treat everybody else, and that is that we will have a recess, and if you want to discuss matters with your friends or persons who are assisting you, that's all right, but I am not going to interrupt the trial in order to permit this kind of thing."

The trial then continued. Defendant struggled through cross-examination of the state's first two witnesses. After that he gave up. He repeatedly stated that he did not know what was going on, that he did not know what to do, and that he could not inquire without the assistance of counsel. At one point he specifically requested court appointment of a licensed attorney. Although defendant was found to be eligible for appointed counsel, he was told none was available. He presented no defense and was found guilty.

The state relies on *State v. Easton,* 35 Or App 603, 582 P2d 37 (1978). In that case, we held that it was not an abuse of discretion for the trial court to deny a motion for appointment of co-counsel on the day of trial where, concededly, the accused had knowingly waived his right to appear by counsel. This case, however, is markedly different, because defendant adamantly protests any claim that he effectively waived his right to be represented by counsel.[1]

We consider first whether defendant waived his right to counsel as guaranteed by Art I, § 11, of the

---

[1] This case also does not present a situation where the defendant has discharged counsel for the purpose of delay. *See, e.g., State v. Page,* 18 Or App 109, 523 P2d 1291 (1974). The record does not show that representation by Billings would have been unacceptable to defendant. The precise reasons for Billings' withdrawal do not appear.

Oregon Constitution. In *State v. Verna,* 9 Or App 620, 624, 498 P2d 793 (1972), we held that Art I, § 11, provides a defendant in a criminal case with the constitutional right, if he so elects, to represent himself. We offered the following cautionary remarks, however:

> " 'When a trial court is confronted with a defendant who asserts his desire to waive counsel, it must steer carefully between the Scylla of denying the defendant's substantial right to determine his own fate and the Charybdis of violating the constitutional right to counsel of a person who does not validly waive this right * * *.' Note, *The Right of an Accused to Proceed Without Counsel,* 49 Minn L Rev 1133, 1141 (1965).

> "Because the election to defend *pro se* necessarily involves a waiver of the right to counsel, it is incumbent upon the court to determine, by recorded colloquy, that the election or waiver is intelligent and competent. *Carnley v. Cochran,* 369 US 506, 82 S Ct 884, 8 L Ed 2d 70 (1962); *Johnson v. Zerbst,* 304 US 458, 465, 58 S Ct 1019, 82 L Ed 1461, 1466, 146 ALR 357 (1938); *State v. Collman,* 9 Or App 476, 497 P2d 1233 (1972). At minimum, the court should determine whether defendant understands the nature of the charge, the elements of the offense and the punishments which may be exacted. Further informing him of some of the pitfalls of defending himself, the possible advantage that an attorney would provide, and the responsibility he incurs by undertaking his own defense will also serve to insure defendant's decision is made intelligently." 9 Or App at 626.

■■    Although the trial court informed defendant that it would not "recommend" self-representation, we emphasize that more is required. The inquiries suggested in *State v. Verna, supra,* do not demand strict obedience, *State v. Barnett,* 41 Or App 799, 803, 598 P2d 1301 *rev den* (1979), but they are helpful guidelines. In any event, the record must clearly demonstrate that the decision to waive counsel was the product of an intelligent and understanding choice. There is no evidence here to indicate that defendant made a choice of any sort. Defendant at no time expressed a willingness to proceed unassisted. He

acquiesced in the release of his retained counsel on the condition that he be allowed the assistance of persons not licensed to practice law. He believed that it was his right to receive such assistance. When it became evident to him during the course of trial that he would not be able to consult with his friends, he requested the appointment of a licensed attorney. His request went unanswered.

■ Equally as important is the fact that defendant was never really presented with a choice. At the time of Billings' withdrawal defendant was financially unable to hire another attorney. This was apparent to the trial court, yet defendant was not advised of his right to appointed counsel. *Stevenson v. Holzman,* 254 Or 94, 458 P2d 414 (1969); *State v. Collman,* 9 Or App 476, 497 P2d 1233 (1972). The court proceeded with the trial without determining whether defendant would have preferred appointed counsel to representing himself. Defendant was never presented the alternative, making his self-representation a *fait accompli.*

■ The trial court correctly rejected defendant's request to be represented by persons not members of the state bar. ORS 9.160. That request, however, did not constitute a waiver of counsel. It was error to permit defendant's retained counsel to withdraw and then continue with the trial without both advising defendant of his right to appointed counsel and appointing one for him if he so desired.

Reversed and remanded for new trial.